**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KHADI MADAMA, | CIVIL ACTION NO. 12-1451 (MLC) |
|    Plaintiff, | **MEMORANDUM OPINION** |
|    v. | |
| GENESIS REHAB SERVICES, | |
|    Defendant. | |

**COOPER, District Judge**

      The Plaintiff, Khadi Madama ("Plaintiff"), commenced this action in 2012 against the Defendant, Genesis Rehab Services ("Defendant" or "Genesis"), alleging three claims: (1) violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of New Jersey's common law right of publicity; and (3) unjust enrichment. (See dkt. entry no. 1, Compl. at 5-6.) Defendant moved for summary judgment in its favor on all counts. (See dkt. entry no. 20, Mot. for Summ. J.) For the reasons that follow, that motion will be granted.

**I.      BACKGROUND**

      The undisputed facts based on the summary judgment record are as follows. Defendant is a health care company that provides rehabilitation and wellness services to patients in nursing homes and other types of assisted living and independent living health care facilities. (Dkt. entry no. 20-2, Def.'s Statement of Undisputed Material Facts ("SMUF") at ¶ 1.) One of Defendant's therapy services is a program called Seniors Pursuing Active Living ("SPA Living"), which includes exercise classes, seminars, and newsletters for older adults.

(Id. at ¶¶ 2, 3.)  Defendant's customers, various health care facilities, may choose to enter into therapy services agreements with Defendant specifying which of the various SPA Living programs they will offer their residents and at what price.  (Id. at ¶¶ 4-6.)

Plaintiff is a self-described "B celebrity" with notoriety "in the areas of Eastern philosophies and non-traditional therapies."  (Id. at ¶¶ 7-8.)  Plaintiff has authored several books and blogs, and had a television show called Yours Truly, Yoga, which aired from 1996 to 2000.  (Id. at ¶ 8-9.)  She has had speaking engagements and has appeared as a guest on various television and radio broadcast programs.  (Id. at ¶ 9.)

In approximately 2003-2004, Plaintiff became involved with Defendant as a participant on Defendant's Champion Consulting Team, and, in that capacity, she provided feedback on some of Defendant's wellness programs.  (See id. at ¶ 13; dkt. entry no. 22-2, Pl.'s Response to Def.'s Statement of Undisputed Facts ("Response to SMUF") at ¶ 13.)  Defendants also hired Plaintiff in 2005 "as a wellness coordinator to teach classes at Genesis's Waterford Glen facility in Wall Township, New Jersey on a per diem basis."  (SMUF at ¶ 14.)

Around 2008, Plaintiff began discussions with Defendant's employees about the possibility of a tai chi program for seniors that would be offered as part of SPA Living.  (Id. at ¶ 15; Response to SMUF at ¶ 15.)  The program was called "Gen-Chi®," and according to Plaintiff, she "came up with the title or the brand Gen-Chi."  (Dkt. entry no. 20-4, Baragona Decl., Ex. A, Madama Dep. at 79.)  Plaintiff testified that she is talented "in branding things, so [she] though Gen-Chi would be fabulous because it's a unique system and it would be [Defendant's] trademark system.  [She] thought it would be wonderful for [Defendant] to

2

have [its] own name on [the tai chi program]." (Id.)  Plaintiff testified that she thought the name Gen-Chi® was "wonderful" because "it allows people to know this is a Genesis product and Tai Chi product." (Id. at 258.)  Despite her involvement in the creation and naming of Defendant's tai chi program, Plaintiff sent an email to Lou Ann Soika ("Soika"), the Genesis employee responsible for developing SPA Living, which stated, in part, that the Gen-Chi® product "will be owned by Genesis exclusively with all rights." (SMUF at ¶ 20.)  Defendant currently "holds a registered trademark in the name 'Gen-Chi®.'" (Id. at ¶ 19.)

Plaintiff testified that she began developing the Gen-Chi® program in January 2009. (Id. at ¶ 21.)  Specifically, she "choreographed" the Gen-Chi® movements for Defendant. (Id. at ¶ 22.)  For her work in connection with Gen-Chi®, which included "preparing drafts and demonstrating the movements comprising Gen-Chi®," she "was paid at the rate of $120 per hour." (Id. at ¶¶ 16, 35.)  This "was double the rate of $60 per hour that Plaintiff had received in connection with the services she previously rendered for" Defendant. (Id. at ¶ 16.)  Over several months, Plaintiff created "written drafts of the choreographed movements, . . . a twelve-week class curriculum, a historical overview of tai-chi, general instructions, and a student handout." (Id. at ¶ 23.)  She submitted these documents to Soika and to Carol Soldau ("Soldau"), Marketing & Production Coordinator for Defendant, for their review and approval. (Id.)  Additionally, Plaintiff went to Defendant's headquarters "to demonstrate the components of Gen-Chi® for Ms. Soika and Keri Bednarcik, a Genesis physical therapist, so that they could visually observe the movements in action to ensure they were within safety parameters." (Id. at ¶ 24.)

Once the Gen-Chi® program was finalized, Gen-Chi® instructional DVDs and manuals were created for distribution to customers who purchased the Gen-Chi® program as part of SPA Living.  (See id. at ¶ 26.)  Defendant hired a videographer to film Plaintiff instructing a Gen-Chi® class, which was comprised of Genesis employees, to create instructor and student DVDs.  (Id. at ¶¶ 27-29.)  "Plaintiff participated in an 'eight hour film day' and 'posed a lot' to capture the footage for the videos."  (Id. at ¶ 33.)  She also "performed the voice-overs for the DVDs [after the class was filmed] to provide the accompanying oral explanation of the movements."  (Id. at ¶ 34.)  "The finalized DVDs contain footage of Plaintiff leading the Gen-Chi® class through the warm-ups and movements that comprise the components of the program, and also contain a still photograph of Plaintiff in a Gen-Chi® position on the label of each disc."  (Id. at ¶ 30.)  Plaintiff was paid her $120 per hour rate for the time spent filming the DVDs and providing the voice-overs. (Id. at ¶ 35.)

Soldau also formatted Plaintiff's drafts of the Gen-Chi® components "to create an instruction manual for instructors who would be teaching Gen-Chi® at other facilities and a set of student flashcards."  (Id. at ¶ 40.)  The student DVD was packaged with the student flashcard book, and the instructor's DVD included the instruction manual.  (Id. at ¶ 41.)  The instruction manual did not contain photographs or images of Plaintiff.  (Id. at ¶ 43.)  However, the flashcard books contain "a photograph of Plaintiff in a Gen-Chi® pose on the cover" and "illustrated images of Plaintiff performing the various Gen-Chi® components."  (Id. at ¶ 44.)

Plaintiff testified that she knew she was being photographed and filmed for the creation of the Gen-Chi® materials, including the DVDs and flashcard books, which would be distributed to Defendant's customers who purchased the Gen-Chi® program, and she "never raised any objection to this use of her image during the time she provided services for Genesis." (Id. at ¶¶ 31-32, 45-48.) Plaintiff's name is not mentioned verbally or in writing in the Gen-Chi® materials; however, the DVDs, instruction manuals, and student flashcard books display the Genesis name and SPA Living trademark. (Id. at ¶¶ 36-38, 42.)

Defendant held a training session on July 22, 2010, following the completion of the Gen-Chi® program, "where Plaintiff was paid to instruct eleven Genesis therapists on how to teach Gen-Chi®." (Id. at ¶ 60.) The Gen-Chi® program was piloted by these newly trained therapists for free at three facilities. (Id. at ¶¶ 61-63.) Defendant states that, currently, Gen-Chi® is only being offered at two facilities and that it has not earned any revenue from Gen-Chi® because it did not impose an additional charge on facilities where Gen-Chi® programs were piloted or offered. (Id. at ¶¶ 63-65.)

Plaintiff also worked "on a modified yoga class for older adults" named "Gen-Ergy" that was intended to be included in the SPA Living program. (Id. at ¶ 49.) Plaintiff's work on Gen-Ergy began in early 2010 and concluded in July 2010. (Id. at ¶¶ 49, 55.) As with Gen-Chi®, Plaintiff choreographed the components and warm-ups for Gen-Ergy. (Id. at ¶ 50.) Her work included drafting the components of the Gen-Ergy program, including general instructions, a student handout, and a class curriculum. (Id. at ¶ 53.) These were again submitted to Soldau and Soika for their review and approval, and Soldau formatted these to create a Gen-Ergy instruction

manual.  (Id. at ¶¶ 54, 56.)  Plaintiff also demonstrated the Gen-Ergy components to Soika.  (Id. at ¶ 54.)  No DVDs were created for Gen-Ergy, and while an instruction manual was drafted, it did not contain photographs or illustrations of Plaintiff.  (Id. at ¶¶ 57-58.)  "Gen-Ergy was never finalized and was never offered as part of SPA Living."  (Id. at ¶ 59.)

Plaintiff wanted to continue to work for Defendant after the Gen-Chi® program was fully created.  Beginning in January 2011 through August 2011, Plaintiff sent a series of emails to Defendant's employees, including Soika and Melissa O'Hara ("O'Hara"), expressing her interest in continuing her work on these projects and suggesting other ideas for Genesis programming.  (Baragona Decl. at Ex. L, Emails between Plaintiff and Soika/O'Hara; id. at Ex. N, Email from Plaintiff to Soika.)  O'Hara's and Soika's responses indicate that they were very busy with other projects and did not have a need for Plaintiff's services at that time.  (See Emails between Plaintiff and Soika/O'Hara.)

Plaintiff was paid a total of about $32,000 for her work on Gen-Ergy and Gen-Chi®.  (SMUF at ¶ 66.)  The terms of Plaintiff's involvement with these programs were never committed to writing.  Plaintiff's attorney, in an email to Defendant's President, stated that prior to Plaintiff's participation in these programs, she "did not receive any type of agreement from [Defendant] outlining the terms of her involvement, her compensation or the permitted uses of her name, likeness, teaching and methods."  (Baragona Decl. at Ex. M, Email chain between Dan Hirschfeld and Patrick Scaglione.)  Plaintiff likewise testified that she never entered into a contract, written or oral, regarding what, if any, fees or royalties she would be paid based on sales of Gen-Chi® or Gen-Ergy.  (Madama Dep. at 177-78.)

Plaintiff testified at her deposition that, during her time working for Defendant, she did not tell anyone that they could not use the photographs, illustrations, or filmed footage of her performing the Gen-Chi® motions as part of the Gen-Chi® products.  (Id. at 171-72.)  However, she did not "sign off" on the use of these photographs, images, and footage "either."  (Id. at 172.)  She testified that Defendant never asked her to sign off on the use of her image.  (Id.)  Plaintiff claims that she did not communicate any objection to Defendant's use of her image in the footage, photographs, and illustrations "because [she] thought [she] would have continued involvement in both projects."  (Id. at 172-73.)

It is undisputed that "Plaintiff has not demonstrated that customers have purchased Gen-Chi®" because of the use of Plaintiff's image or likeness.  (SMUF at ¶ 75.)  It is also undisputed that the report of Plaintiff's expert, Dawn Swidorski, which assesses the value of Gen-Chi® and Gen-Ergy, "does not identify any damages that Plaintiff suffered to the commercial value of her services or her alleged 'celebrity' status as a result of Genesis's use of her likeness."  (Id. at ¶¶ 76-78.)

Based on the foregoing, Plaintiff filed a complaint on March 9, 2012 asserting three claims: (1) false designation of origin and false descriptions and representations in commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) "the unauthorized use of Plaintiff's persona for commercial gain" in violation of the New Jersey's common law right of publicity; and (3) unjust enrichment based on Defendant's use of Plaintiff's reputation, likeness, image, and persona.  (Compl. at 5-6.)  After discovery was concluded, Defendant moved for summary judgment on January 10, 2014.  (See dkt. entry no. 20.)

7

## II.     SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56, which provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 331 (1986). In response, "the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp., 477 U.S. at 322-23). Summary judgment is "proper if, viewing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." United States ex rel. Kosenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009).

## III.     LEGAL PRINCIPLES AND DISCUSSION

All of Plaintiff's claims relate to the alleged commercial benefit obtained by Defendant by the use of images of Plaintiff. With respect to Defendant's Gen-Ergy program, it is undisputed that Gen-Ergy was never finalized or offered as part of Defendant's SPA

Living program.  (See SMUF at ¶ 59.)  Because Defendant did not receive a commercial

benefit from Gen-Ergy or from Plaintiff's work on Gen-Ergy, the Court will analyze each of

Plaintiff's claims with regard to Gen-Chi® only.

A.      **Right of Publicity**

"The right of publicity signifies the right of an individual, especially a public figure or

celebrity, to control the commercial value and exploitation of his name and picture or likeness

and to prevent others from unfairly appropriating this value for commercial benefit."  Prima v.

Darden Rests., Inc., 78 F.Supp.2d 337, 348 (D.N.J. 2000) (quoting McFarland v. Miller, 14

F.3d 912, 918 (3d Cir. 1994)).  "The theory underlying the right is that a celebrity has the right

to capitalize on his persona, and the unauthorized use of that persona for commercial gain

violates fundamental notions of fairness and deprives the celebrity of some economic value in

his persona."  Id. at 349 (citing McFarland, 14 F.3d at 919).  To prove a claim for the

violation of the common law right of publicity, Plaintiff must prove that (1) "she owns an

enforceable right in the identity or persona" of the person; (2) "defendants without

permission, . . . used some aspect" of that person's identity or persona in an identifiable way;

and (3) the use by defendants "is likely to cause damage to the commercial value of that

persona."  Id. (internal quotation marks and citation omitted).

If a plaintiff consents to the use of her likeness and the defendant's use is within the

scope of that consent, there can be no violation of the right of publicity because the

defendant's usage was authorized.  See Canessa v. J.I. Kislak, Inc., 97 N.J. Super. 327, 358

(N.J. Super. Ct. 1967).  Other jurisdictions have appropriately recognized — with respect to

the common law tort of the right of publicity — that consent need not be express and may be implied from the action or inaction of the plaintiff.  See, e.g., Jones v. Corbis Corp., 815 F.Supp.2d 1108, 1113 (C.D. Cal. 2011), aff'd, 489 Fed.Appx. 155 (9th Cir. 2012); Churchill in Crestwood, LLC v. Schwartz, No. 09-100, 2011 WL 7109212, at *15 (W.D. Mo. Jan. 27, 2011).  Implied consent is measured by an objective standard, and the plaintiff's subjective belief is not determinative.  See Jones, 815 F.Supp.2d at 1112 n.2, 1114; Churchill in Crestwood, LLC, 2011 WL 7109212, at *15-16; Dale v. Coors Brewing Co., No. 48892-9-I, 2002 WL 1898162, at *5-6 (Wash. Ct. App. Aug. 19, 2002).

Defendant argues that Plaintiff cannot establish her right-of-publicity claim because her "implied authorization" to use her likeness in connection with Gen-Chi® "was sufficient to establish consent."  (Dkt. entry no. 25, Def.'s Reply Br. at 4.)  Specifically, "[s]he posed for the videos and illustrated images, knew those images would be used in connection with Gen-Chi®, and never objected to their use."  (Id.)  Defendant also contends that this claim must fail because Plaintiff failed to present "any evidence that the use of her image in connection with Gen-Chi® has damaged the commercial value of her likeness, harmed her professional reputation, or negatively impacted her ability to earn a living."  (Id.)  Plaintiff argues that she "did not sign any document allowing Defendant to use her image" and that the service is being offered in an unsafe manner — namely that "Defendant has allowed seniors in wheelchairs and with other mobility restrictions to take part in the program" — which jeopardizes the viability of her persona.  (Dkt. entry no. 22, Pl.'s Opp'n at 3, 10-11.)

The Court concludes that Plaintiff has failed to come forward with evidence demonstrating a dispute of material fact on the issues of consent and likelihood of damage to Plaintiff.  The undisputed facts demonstrate that Plaintiff willingly posed for the photographs and videos, knowing that the images of her would be used in connection with the Gen-Chi® program.  Plaintiff correctly notes that she did not "sign off" on the use of her image, but Defendant need not establish express consent to defeat this claim.  See, e.g., Jones, 815 F.Supp.2d at 1112 n.2, 1114; Churchill in Crestwood, LLC, 2011 WL 7109212, at *15-16; Dale, 2002 WL 1898162, at *5-6.  And at no point did Plaintiff condition Defendant's use of the program or the images of Plaintiff on obtaining her express authorization.  (See SMUF at ¶¶ 73-74.)

Plaintiff testified that she did not object to the use of her image based on her subjective expectation that she would have continued involvement in the Gen-Chi® program.  (Madama Dep. at 172-73.)  However, when measured by an objective standard, Plaintiff's words and actions did not communicate the conditional nature of her implied consent, and therefore, her belief that her consent to Defendant's use of her image was contingent upon some amorphous concept of continued involvement with the projects is not determinative.  See Jones, 815 F.Supp.2d at 1114.  The record, viewed in the light most favorable to Plaintiff, suggests that Plaintiff was cooperating with Defendant on the development of new projects, which were ever evolving, and while Plaintiff was involved from time to time and was in frequent communication with Defendant's employees, no plan for Plaintiff's continued involvement was ever negotiated or defined.  Plaintiff grew restless while waiting for Defendant to use her

11

services further.  But at no point did the parties define the future of Gen-Chi® or Gen-Ergy in

general, let alone the future of Plaintiff's work on those projects.  Likewise, the fact that

Plaintiff is dissatisfied with the manner in which Defendant is operating Gen-Chi® is not

determinative because she did not communicate the contingent nature of her authorization on

a specific manner in which the program would be offered.  See id. ("Consent is measured

from Plaintiff's manifested action or inaction.")  Here, Plaintiff's filming and posing for

photographs, illustrations, and videos, knowing that her image would be used in connection

with SPA Living program, is controlling in the absence of limitations placed by Plaintiff on

her implied consent.

       The Court notes that, even in the absence of this consent, Plaintiff has failed to come

forward with any evidence — beyond conclusory statements about the dangerous manner in

which Gen-Chi® is operated in the only two facilities where it is offered — that there is a

likelihood that her persona will be damaged by the use of her image in connection with Gen-

Chi®.  Even if she is correct that Gen-Chi® is being offered in a dangerous manner, there is

absolutely no evidence in the record that Plaintiff would be associated with that unsafe

manner, as her name appears nowhere in the program materials and Plaintiff does not purport

to be recognizable to the users of the Gen-Chi® program, the senior care facilities and the

seniors.  (See SMUF at ¶¶ 36, 78.)  Therefore, the Court will grant summary judgment in

Defendant's favor on Plaintiff's claim for a violation of the right of publicity.

B.      **Lanham Act False-Endorsement Claim[1]**

Section 43(a) of the Lanham Act provides redress to a plaintiff where, inter alia, the plaintiff's likeness was "used in such a way as to deceive the public into believing that they endorsed, sponsored, or approved of the defendant's product." Mktg. Prods. Mgmt., LLC v. Healthandbeautydirect.com, Inc., 333 F.Supp.2d 418, 430 (D. Md. 2004) (quoting Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co., 4 F.3d 327, 334 (4th Cir. 1993)).  To succeed on such a claim for "false endorsement," "the plaintiff must prove the likelihood of consumer confusion as to the origin, approval or endorsement of the product." Id.  There are several factors that are used to evaluate the likelihood of confusion in a false-endorsement case:

> (1) the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended; (2) the relatedness of the fame or success of the plaintiff to the defendant's product; (3) the similarity of the likeness used by the defendant to the actual plaintiff; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent [in] selecting the plaintiff; and (8) likelihood of expansion of the product lines.

Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1019 (3d Cir. 2008) (citing Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007-08 (9th Cir. 2001)).

---

[1]      Plaintiff also lists, in her complaint as part of her Lanham Act claim, false designation of origin.  For such a claim, the Supreme Court of the United States has held that the term "origin of goods" as used in Section 43(a) of the Lanham Act refers to "the producer of the tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37 (2003).  In its opening brief, Defendant argued any false-designation-of-origin claim must fail because Plaintiff was not the producer of the product at issue.  (See dkt. entry no. 20-1, Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br.") at 10-11.)  Plaintiff's opposition did not contradict this line of argument with respect to a false-designation-of-origin claim and instead focused on a claim under the Lanham Act for false endorsement.  (See Pl.'s Opp'n at 11-21.)  Therefore, the Court construes Plaintiff's claim under the Lanham Act as one for false endorsement, not false designation of origin.  Even if Plaintiff were to pursue a claim for false designation of origin, the Court agrees with Defendant that such a claim would fail because Plaintiff was not the producer of Gen-Chi® or Gen-Ergy.

The typical, successful false-endorsement claim "involve[s] depictions of or statements attributed to well-known individuals who in fact were in no way associated with the defendant's product." Mktg. Prods. Mgmt., LLC, 333 F.Supp.2d at 431.  Where the plaintiff was in fact involved in some way with the defendant's product, false-endorsement claims have been less successful.  For example, in Marketing Products Management, the court found that where the plaintiff had assisted in the development of the product in question and had participated in the creation of an infomercial about that product, the continued use of the infomercial after the plaintiff was no longer involved with the product was not "misleading nor 'likely to confuse' consumers" because the plaintiff was associated with the product when the infomercial was filmed.  Id. at 430-31.

Defendant argues that Plaintiff's Lanham Act false-endorsement claim must fail because she cannot show that Defendant's use of her image is likely to cause confusion. (Def.'s Reply Br. at 6.)  Defendant asserts that, as explained by the court in Marketing Products Management, "a claim for false endorsement will not succeed when a person is hired to pose for a photograph or video that will be used in connection with the sale or marketing of a product."  (Id.)  Here, "Plaintiff worked for Genesis, willingly posed for the Gen-Chi® videos, and knew that her image would be used in connection with the sale of Gen-Chi® to customers who purchased the program as part of SPA Living."  (Id. at 6-7.)  "[T]here is nothing to be confused about; Plaintiff was involved with the development of Gen-Chi®, knew her image would be used in connection with the product, and never objected to such

14

use." (Id. at 7.) Defendant further contends that consideration of the <u>Facenda</u> factors points

to the absence of a likelihood of confusion. (Id. at 8.) Defendant focuses specifically on the

first factor — "the level of recognition that the plaintiff has among the segment of the society

for whom the defendant's product is intended" — and argues that there is no evidence that

Plaintiff "has any particular notoriety amongst providers of senior care services" or the seniors

themselves. (Id.) As to Plaintiff's contention that Gen-Chi® is being used "in an unsafe

manner and that this may cause consumers to be confused into believing that she endorsed an

unsafe product," Defendant asserts that this "is insufficient to establish likelihood of

confusion" because the standard is not whether consumer confusion is possible but rather

whether it is likely. (Id. at 7.)

Plaintiff argues, in contrast, that "Defendant's use of [her] image creates the false

impression to the public that [she] has given the Gen-Chi exercise program her full and

unfettered endorsement," but "[n]o such endorsement occurred." (Pl.'s Opp'n at 12.) As to

the <u>Facenda</u> factors, Plaintiff asserts that she is a "B Celebrity" in the holistic health care field

and that Defendant hired her to create the Gen-Chi® program "because of her unique

qualifications, experience, and abilities." (Id. at 19-20.) Thus, "Defendant's Gen-Chi

program is directly correlated to [her] success." (Id. at 20.)

The Court concludes that Plaintiff cannot establish a false-endorsement claim because,

viewing the facts in the light most favorable to her, she cannot prove the likelihood of

consumer confusion. Like the plaintiff in <u>Marketing Products Management</u>, Plaintiff here

was actually associated with the products in question. She was employed by Defendant, and

in that capacity, she was filmed and photographed, all while knowing that her likeness would be used by Defendant in commerce and not objecting to such use.  Therefore, there was nothing "false" about Defendant's use of her likeness.

The Court also notes that Plaintiff has failed to present any evidence that her persona was even recognizable to the end users of the Gen-Chi® program, seniors and senior care facilities.  And, as a result, her alleged notoriety has little to do with the success of the Gen-Chi® program.  See Facenda, 542 F.3d at 1019 (listing factors for evaluating likelihood of confusion); Landham v. Lewis Galoob Toys, Inc., 227 F.3d 619, 627 (6th Cir. 2000) (affirming summary judgment for defendant on false-endorsement claim where plaintiff "had offered no evidence with regard to his name recognition among . . . the toy-buying public").

Plaintiff's inability to establish a likelihood of confusion is amplified by the unavoidable impression that Plaintiff's image was not used by Defendant for endorsement purposes.  The record suggests — even when viewed in the light most favorable to Plaintiff — that Defendant did not hire Plaintiff in an endorsement capacity, i.e., to promote SPA Living programs because of her notoriety or celebrity.  Rather, the record reveals that Defendant hired Plaintiff to develop Gen-Chi® and Gen-Ergy because of her expertise with tai chi and yoga.  (See Def.'s Reply Br. at 9-10 ("Genesis did not use Plaintiff's image on the program materials to capitalize on her alleged celebrity status. . . . [T]he use of her image was a matter of function based upon her knowledge of tai-chi, not to generate media attention by use of her name or face."); Pl.'s Opp'n at 20 ("Defendant does not dispute [that Plaintiff] . . . was hired . . . because of her unique qualifications, experience, and abilities.").)  Plaintiff's

image was not used as an endorsement of the product, but, rather, these images of Plaintiff demonstrating the Gen-Chi® movements were part of the product itself.  In this regard, this is even a weaker case for false endorsement than <u>Marketing Products Management</u>, where the image of the plaintiff was actually used in the advertisement of the product as opposed to the creation of the product.[2]

The Court, for these reasons, concludes that Defendant has carried its burden of demonstrating its entitlement to summary judgment on the Lanham Act claim and Plaintiff has failed to come forward with disputes of material fact sufficient to defeat summary judgment.  Therefore, the Court will grant summary judgment in favor of the Defendant on the Lanham Act claim.

## C.    Unjust Enrichment

Plaintiff has also asserted a claim for unjust enrichment based on the alleged "benefit Defendant[] received by using Plaintiff's reputation, likeness, image and persona, to

---

[2]    This disconnect between the essence of a false-endorsement claim and the facts of this case suggest that Plaintiff's grievances truly sound in breach of contract, specifically with regard to her expectation of continued employment and the manner in which the Gen-Chi® program is being offered.  (<u>See</u> Def.'s Br. at 16 ("Plaintiff appears to be seeking a remedy for breach of contract, a claim which she has not and cannot assert.").)  But, as previously stated, the full scope of Plaintiff's involvement with Gen-Chi® was never negotiated or agreed upon, orally or in writing; rather, the entire program was a constantly evolving work in progress.  Plaintiff was paid the agreed upon $120 an hour for her services, and Plaintiff did not objectively convey further restrictions on the use of her image.  (SMUF at ¶¶ 16, 35, 73-74.)  Therefore, a breach-of-contract claim would not provide Plaintiff with a remedy.  <u>Cf.</u> <u>Mktg. Prods. Mgmt., LLC</u>, 333 F.Supp.2d at 432 (dismissing plaintiff's false-endorsement claim and stating that there was "no basis in law for implying . . . a cause of action" resting "entirely on the extraordinary assertion that [plaintiff] had a reasonable expectation [which, although he did not protect by contract, he is entitled to have the courts protect as a matter of federal law] that his likeness would only be used as long as he was employed and compensated" by defendant (internal quotation marks omitted)).

Plaintiff's detriment." (Compl. at ¶ 33.) Under New Jersey law, "[t]o assert a claim of unjust enrichment a plaintiff must show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contract rights." Prima, 78 F.Supp.2d at 355 (internal quotation marks and citation omitted); see also VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). "In the absence of a benefit conferred, there can be no claim for unjust enrichment." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 268 (3d Cir. 2008).

Defendant argues that Plaintiff cannot establish unjust enrichment because Defendant paid Plaintiff $120 per hour for her work on Gen-Chi® and Gen-Ergy, a rate that Plaintiff negotiated. (Def.'s Br. at 21; Def.'s Reply Br. at 10.) Defendant contends that it is not required to provide Plaintiff with additional compensation for the use of her likeness because (1) she knew her images were being used in connection with Gen-Chi® and did not object to such usage and (2) the use of her likeness on the DVDs and instructional manuals was for the purpose of demonstrating the Gen-Chi® movements to customers, "not to capitalize on Plaintiff's alleged 'celebrity' status." (Def.'s Br. at 22; see also Def.'s Reply Br. at 10.) Additionally, Plaintiff has failed to come forward with evidence in response to the summary judgment motion that Defendant derived some economic benefit from the use of her image independent of the demonstration of the Gen-Chi® movements to customers. "[T]here is no evidence of customers having purchased Gen-Chi® or having expressed interest in the program [after] they saw her image on the program materials" because of her celebrity status. (Reply Br. at 10.)

Plaintiff argues in support of her unjust-enrichment claim that her celebrity status entitled her to command a rate of pay higher than $120 per hour.  (Pl.'s Opp'n at 22.)  She states that "she forewent this financial opportunity under the guise perpetuated by Defendant that there would be an extended professional relationship between the parties, including [Plaintiff's] participation in the full development and marketing of the Gen-Chi and Gen-Ergy products."  (Id.)  She claims that she "relinquished Defendant's obligation to pay due to her own personal moral compass and sympathy to the difficulties Defendant incurred."  (Id. at 23-24.)  Plaintiff contends that "Defendant's underhanded employment negotiation strategy, resulting in [Plaintiff's] agreement to a lower pay rate in exchange for a prolonged professional relationship that never occurred and the use of her profitable persona, has unjustly enriched Defendant."  (Id. at 25.)

The Court concludes that Plaintiff's unjust-enrichment claim is unsuccessful as well.  Initially, Plaintiff has failed to create a dispute of material fact with her unsupported contentions that she agreed to a lower salary based on the expectation of long term involvement with Defendant on these projects.  This assertion is undermined by the fact that this rate was higher than the rate she previously charged Defendant, $60 per hour, before her involvement with the Gen-Chi® and Gen-Ergy programs.  (SMUF at ¶ 16.)  Moreover, the undisputed facts show that the parties agreed that Plaintiff would be paid a fixed rate of $120 per hour for her services in connection with Gen-Chi® and Gen-Ergy.  (Id. at ¶¶ 16, 35.)  There is no dispute that Defendant fulfilled this obligation.  Plaintiff's subjective expectations about the nature of the employment relationship do not oblige Defendants further in the

19

absence of objective evidence that she conditioned her work on something more to which

Defendant agreed.[3]  Thus, Defendant was not unjustly enriched because Defendant

compensated Plaintiff for her work in connection with Gen-Chi® and Gen-Ergy.

The Court, viewing the facts in the light most favorable to Plaintiff, is left with the

unmistakable conclusion that Defendant hired Plaintiff to demonstrate the movements of the

Gen-Chi® program, not because of her alleged celebrity status.  And it is undisputed that

Plaintiff was compensated for the hours she spent developing the DVDs and being

photographed.  (Id. at ¶¶ 16, 35.)  As previously stated, the record is devoid of facts

suggesting that Defendant's customers — seniors and senior care facilities — would have

been interested in the Gen-Chi® program because of Plaintiff's identity and her endorsement

of the program.  There is no suggestion in the record that these customers would have even

known or recognized Plaintiff.  Thus, the benefit to Defendant of hiring Plaintiff was her

knowledge and expertise of tai chi and yoga.  And Defendant compensated Plaintiff for that

benefit and was not further and unjustly enriched by the use of her image.  For these reasons,

the Court will grant summary judgment in favor of Defendant on the unjust-enrichment claim.

---

[3]      The Court is skeptical that, even if she had expressly communicated such restrictions and
expectations, her expectations would have been sufficiently specific and defined to amount to a
binding obligation, even under an unjust enrichment theory.  See Scagnelli v. Schiavone, No. 09-3660,
2012 WL 3578163, at *5-9 (D.N.J. Aug. 20, 2012) ("This promise is vague as to the material terms of
the amount of what the parties understood to refer to a payment of some kind, as well as the time
frame in which such payment would be made. Such a vague promise cannot form the basis of an
enforceable contract."), aff'd, 538 Fed.Appx. 192 (2013).

## IV.   CONCLUSION

For these reasons, Defendant's motion for summary judgment (dkt. entry no. 20) will

be granted.  The Court will issue an appropriate Order and Judgment.


   s/ Mary L. Cooper       
**MARY L. COOPER**
United States District Judge


Dated: July 24, 2014